IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
MONTGOMERY COUNTY COMMISSION )
and STEVEN L. REED, Judge    )
of Probate for Montgomery    )
County, Alabama, on behalf   )
of themselves and all others )
similarly situated,*         )
                             )
     Plaintiffs,             )
                             )   CIVIL ACTION NO.
     v.                      )    2:12cv885-MHT
                             )        (WO)
FEDERAL HOUSING FINANCE      )
AGENCY, as conservator for   )
Federal National Mortgage    )
Association and Federal      )
Home Loan Mortgage           )
Corporation, et al.,         )
                             )
     Defendants.             )
```

OPINION

Plaintiffs Montgomery County Commission and Judge of Probate for Montgomery County, who seek to represent all other counties across Alabama, charge that defendants Federal National Mortgage Association (commonly known as

---

* Steven L. Reed has replaced Reese McKinney, Jr. as Judge of Probate for Montgomery County and has been substituted as plaintiff pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

"Fannie Mae"), Federal Home Loan Mortgage Corporation (commonly known as "Freddie Mac"), and Federal Housing Finance Agency (the conservator for Fannie Mae and Freddie Mac) are refusing to pay taxes that are due under Alabama law. Subject-matter jurisdiction is proper under 12 U.S.C. § 1452(f)(2) (Freddie Mac) and 28 U.S.C. § 1367 (supplemental).[1]  The case is now before this court on the defendants' motion to dismiss.  For the reasons that follow, the motion will be granted.

---

1. The plaintiffs also invoke the court's diversity jurisdiction under 28 U.S.C. § 1332, but, it seems questionable whether such jurisdiction would be proper here.  That statute applies only to "citizens" of States.  The Supreme Court has held that whether a county government is a "citizen" in the meaning of § 1332 depends on whether, under state law, the county functions "simply [as] the arm or alter ego of the State" or more like "a municipal corporation or an otherwise independent political subdivision." <u>Moor v. Alameda Cnty.</u>, 411 U.S. 693, 717 (1973).  Here, because the recordation tax the plaintiffs seek to recover goes mostly to the State, not the county, <u>see</u> 1975 Ala. Code § 40-22-1(g), that may be reason to think that diversity jurisdiction would be improper.  In any event, because jurisdiction over this case is proper under 12 U.S.C. § 1452(f)(2) and 28 U.S.C. § 1367, the court need not reach the issue.

## I. MOTION-TO-DISMISS STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007), "only enough facts to state a claim to relief that is plausible on its face." Id. at 574.

## II. BACKGROUND

Fannie Mae and Freddie Mac, both government-sponsored enterprises, are charged with buying home loans from approved mortgage sellers, packaging them into mortgage-

backed securities, and selling those in the secondary market. The aim is to increase the amount of funds available to financial institutions for home loans and, in turn, to increase American home ownership.[2] In 2008, Congress merged several existing governmental agencies into the Federal Housing Finance Agency, which now acts as conservator for Fannie Mae and Freddie Mac.[3]

When a mortgage lender forecloses on a delinquent mortgage, it will often transfer title of the foreclosed property to Fannie Mae or Freddie Mac through a foreclosure deed or similar document. Fannie Mae or

---

2. See 12 U.S.C. § 1716 (Fannie Mae's purpose is, among other things, to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation ... by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing"); 12 U.S.C. § 1451 note (describing Freddie Mac's purpose as substantially the same).

3. See 12 U.S.C. § 4617(b)(2)(B) (as conservator, the Federal Housing Finance Agency has the power to "operate" Fannie Mae and Freddie Mac and "to conduct all [of their] business").

4

Freddie Mac, in turn, will record the foreclosure deed or other document with the government of the county in which the property sits, thereby perfecting the corporation's ownership of the property.  Under Alabama law, typically, when a real-property transferee records the transfer with the county, the transferee must pay a so-called "recordation tax" pursuant to 1975 Ala. Code § 40-22-1.

In this lawsuit, the Montgomery County Commission and Probate Judge claim that Fannie Mae and Freddie Mac, although they continue to regularly record property transfers in Montgomery and other counties, unlawfully refuse to pay the recordation tax that is due.  The defendants have moved to dismiss, claiming that, under federal law, Fannie Mae and Freddie Mac are immune from paying the Alabama tax.

III. DISCUSSION

A.

Under 12 U.S.C. § 1723a(c)(2), Fannie Mae, "including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, ... county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, ... county, municipal, or local taxation to the same extent as other real property is taxed." Freddie Mac is afforded an almost identical immunity. See 12 U.S.C. § 1452(e).[4] So is the Federal Housing Finance Agency. See 12 U.S.C. § 4617(j)(2).[5]

---

4. Freddie Mac, "including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by ... any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." 12 U.S.C. § 1452(e).

5. "The Agency, including its franchise, its
(continued...)

These statutory provisions consist of two parts. First, there is the immunity: Fannie Mae and Freddie Mac ("including" the categories of property and activities listed) are "exempt from all taxation."  12 U.S.C. §§ 1723a(c)(2) and 1452(e).  Second, there is the exception to that immunity: "[A]ny real property of [Fannie Mae or Freddie Mac] shall be subject to ... taxation to the same extent as other real property is taxed."  Id.  As such, the court must first decide whether Alabama's recordation tax falls within the ambit of the immunity.  If it does, the question becomes whether it also falls within the exception to the immunity.

---

5(...continued)
capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed ...."  12 U.S.C. § 4617(j)(2).

B.

On first appearance, it seems obvious that Fannie Mae and Freddie Mac are immune from paying the recordation tax. Under the unambiguous language of the statutes, they are immune from "all taxation." Id. It would seem to go without saying that "all taxation" encompasses Alabama's recordation tax. "All means all." Kennedy v. Lynd, 306 F.2d 222, 230 (5th Cir. 1962); see also Fid. Interior Constr., Inc. v. Se. Carpenters Reg'l Council of United Bhd. of Carpenters & Joiners of Am., 675 F.3d 1250, 1264 (11th Cir. 2012) (it is a "fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning").[6]

Moreover, this result would seem to be required by Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314

---

6. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

U.S. 95 (1941) ("Bismarck").  In that case, the Court addressed a provision of the Federal Farm Loan Act, 12 U.S.C. §§ 931-933 (repealed 1971), which provided, almost identically to the statute before this court, "That every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therein, shall be exempt from ... State, municipal, and local taxation ...." See id. at 96 n.1 (quoting statute).  The Court held that, under that statute, the Federal Land Bank of St. Paul was immune from a state sales tax.  "The unqualified term 'taxation' used in [the statute,]" the Court stated, "clearly encompasses within its scope a sales tax such as the instant one."  Id. at 99.

   The sales tax at issue in Bismarck was an "excise tax," a tax imposed on the "sale[] or use of goods" instead of directly on the goods themselves.  Black's Law Dictionary 605 (8th ed. 2004); see also United States v. 4,432 Mastercases of Cigarettes, More or Less, 448 F.3d

9

1168, 1185 (9th Cir. 2006) ("The quintessential excise tax in our country is the sales tax. An excise tax ... is based on a particular transaction or activity."). Likewise, the recordation tax at issue in this case is also an excise tax, a tax on the recording of the transfer of property, not a tax on the property itself. Just as the "exempt[ion] from ... State, municipal, and local taxation" at issue in Bismarck, 314 U.S. at 96 n.1, blocked the sales tax there, the "exempt[ion] from all taxation ... imposed by any State, ... county, municipality, or local taxing authority" at issue here, 12 U.S.C. §§ 1723a(c)(2) and 1452(e), blocks the Alabama recordation tax involved in this case.

Explaining why this seemingly obvious result should not follow, the plaintiffs turn to United States v. Wells Fargo Bank, 485 U.S. 351 (1988). As the plaintiffs see it, that case transformed the words "all taxation" into a term of art referring to direct taxes alone and not excise taxes; therefore, the plaintiffs argue, since the

10

recordation tax here is an excise tax, it is not encompassed within the exemption from "all taxation."

In actuality, Wells Fargo did no such thing. That case dealt with a statutory exemption of "Project Notes" (a kind of property issued by state and local housing authorities under the Housing Act of 1937) from "all taxation." See id. at 353, 355. In holding that the Project Notes' exemption from "all taxation" did not encompass excise taxes, the Court explained, "Well before the Housing Act was passed, an exemption of property from all taxation had an understood meaning: the property was exempt from direct taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed. Underlying this doctrine is the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself." Id. at 355 (emphasis added).

In context, it is clear that the Court is explicating the meaning of exempting property from taxation: an

11

exemption of property from taxation does not block taxes not imposed on the property, and, since excise taxes are not considered to be imposed on the property itself, they are not exempt.  This all seems clear enough.  The Court did not, as the plaintiffs contend, turn the phrase "all taxation" into a term of art in all places where those words may be found.  This case involves an exemption of <u>corporations</u>, not property, from taxation.  Therefore, <u>Bismarck</u> is on point and <u>Wells Fargo</u> is not.

When this case was initially filed, the question presented was somewhat open.  Since then, however, it has been answered eight times.  Across the country, similar lawsuits seeking to have Fannie Mae and Freddie Mac pay a tax comparable to Alabama's recordation tax have been brought and decided, and this court now has the benefit of turning to them for persuasive authority.  Of the eight cases to address the question, all but one have held that Fannie Mae and Freddie Mac are immune from the tax.  <u>Delaware Cnty. v. Fed. Hous. Fin. Agency</u>, 2013 WL 1234221 (E.D. Pa. Mar. 26, 2013) (Pratter, J.); <u>Fannie</u>

12

Mae v. Hamer, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013) (Kapala, J.); Hager v. Fed. Nat. Mortgage Ass'n, 882 F. Supp. 2d 107 (D.D.C. 2012) (Bates, J.); Hennepin Cnty. v. Fed. Nat. Mortgage Ass'n, ___ F. Supp. 2d ___, 2013 WL 1235589 (D. Minn. Mar. 27, 2013) (Doty, J.); Hertel v. Bank of Am. N.A., ___ F. Supp. 2d ___, 2012 WL 4127869 (W.D. Mich. Sept. 18, 2012) (Bell, J.); Nicolai v. Fed. Hous. Fin. Agency, ___ F. Supp. 2d ___, 2013 WL 899967 (M.D. Fla. Feb. 12, 2013) (Covington, J.); Vadnais v. Fed. Nat. Mortgage, 2013 WL 1249224 (D. Minn. Mar. 27, 2013) (Doty, J.); but see Oakland Cnty. v. Fed. Hous. Fin. Agency, 871 F. Supp. 2d 662 (E.D. Mich. 2012) (Roberts, J.).  This court sides with the majority.

### C.

Having decided that the recordation tax is encompassed in the immunity from "all taxation," the court must now decide whether the tax also falls into the immunity's exception: "[A]ny real property of [Fannie Mae or Freddie Mac] shall be subject to ... taxation to the

13

same extent as other real property is taxed." 12 U.S.C. §§ 1723a(c)(2) and 1452(e). Here, Wells Fargo provides the answer. As that case explained, "an excise tax, which is levied upon the use or transfer of property," is distinct from "a tax levied upon the property itself." 485 U.S. at 355. The statutes' references to taxes on the "real property of [Fannie Mae and Freddie Mac]" means taxes imposed directly on the property itself, not excise taxes imposed on the corporations for the privilege of transferring property. As previously stated, the recordation tax is the latter. Therefore, in sum, Freddie Mac and Fannie Mae are immune from the recordation tax, and the tax does not fall into the immunity's exception.[7]

---

7. Notably, in most of the other similar cases, the parties and the court assumed that the immunity exception would not apply. See, e.g., Fannie Mae, 2013 WL 591979, at *4 ("The primary issue in this case is determining what Congress meant when it wrote into [Fannie Mae's and Freddie Mac's] charters that they were 'exempt from all taxation' from state and county governments, absent exceptions not relevant here.") (emphasis added); Hager, 882 F. Supp. 2d at 111 ("Plaintiffs concede that the
(continued...)

D.

In a single footnote in their brief, the plaintiffs contend that if Fannie Mae and Freddie Mac are immune from the recordation tax, which this court has decided they are, such immunity would be unconstitutional. Pls.' Resp. (Doc. No. 58) at 14 n.7. They cite United States v. New Mexico, 455 U.S. 720 (1982), but that case is inapposite. That case addressed only "constitutional immunity," the rule that "a State may not, consistent with the Supremacy Clause, U.S. Const., Art. VI, cl. 2, lay a tax directly upon the United States." Id. at 733. The case said nothing about Congress's ability to afford, through statute, tax immunity to private corporations the federal government creates, like Fannie Mae and Freddie Mac. Cf. United States v. Michigan, 851 F.2d 803, 806 (6th Cir. 1988) (noting that federal credit unions may be

---

7(...continued)
exception for taxes on 'real property' is inapplicable because the recordation tax is an excise tax on the privilege of transferring title rather than a tax on real property itself.").

15

"entitled to constitutional, as well as, statutory, immunity from state taxation"). The plaintiffs have not advanced any serious argument that affording Fannie Mae and Freddie Mac statutory tax immunity is anything other than a necessary and proper means of carrying out Congress's legitimate powers, and the court declines the invitation to imagine such an argument for the plaintiffs.

### E.

In conclusion, Fannie Mae and Freddie Mac are immune from Alabama's recordation tax, and this court has been given no reason to think such immunity is unconstitutional. Moreover, for the same reasons as those already discussed, the Federal Housing Finance Agency is also immune under 12 U.S.C. § 4617(j)(2). The plaintiffs may not recover the recordation tax from any

16

of the defendants in this case.  The motion to dismiss will be granted.[8]

An appropriate judgment will be entered.

DONE, this the 6th day of May, 2013.

                          /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE

---

8. Because the court decides that Fannie Mae's and Freddie Mac's statutory immunity from the recordation tax is fatal to the plaintiffs' claims, the court need not reach the defendants' other arguments for dismissal.